(No. 36984.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHNNIE MCCREARY, Plaintiff in Error.

*Opinion filed November 26, 1963.*

ALLAN N. LASKY, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and ELMER C. KISSANE and MATTHEW J. MORAN, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE DAILY delivered the opinion of the court:

Defendant, Johnnie McCreary, having waived a jury trial, was convicted in the criminal court of Cook County of assault with intent to commit murder and was sentenced to the penitentiary for a term of not less than six nor more than fourteen years. He prosecutes this writ of error contending: (1) that the trial court erred in refusing to grant a continuance; (2) that he was denied a fair trial due to the failure of the People to produce a knife allegedly wielded by the victim of the assault; (3) that the trial judge misapprehended the law of self-defense; and (4) that the finding of guilt is not supported by the evidence.

On the night of December 26, 1960, a party was held at defendant's place of residence in Chicago and among those present were Hattie Wade, Helen Smallwood, Annie Jamieson, Willie Smallwood and S. A. Anderson. About 10:00 P.M., while defendant was temporarily absent, James Manns came to the house accompanied by one or more friends and became engaged in an altercation with Ander-

son over the affections of Hattie Wade. In the melee a door was broken and considerable damage was done to furnishings. After the fight Manns left the premises and went to a tavern. Defendant returned shortly after Manns had departed, and it appears from his testimony and that of others still present that Manns telephoned and threatened to return and do still further violence. A police officer who had been summoned verified that a threatening telephone call had been received while he was investigating at the residence, but stated that he could not identify the caller, to whom he spoke and gave warning to stay away. Manns denied making the threatening calls.

About twenty-five minutes after the last call was received, the defendant, Anderson and Willie Smallwood left the house ostensibly for the purpose of getting a drink. Before leaving defendant armed himself with a small calibre pistol. Coincidentally, if defendant is to be believed, the three men happened to go to the tavern where Manns was drinking, and after some conversation between defendant and Manns on the inside, the group moved into the street. What occurred there is in conflict.

For the prosecution the complaining witness and one Charles Davis, his cousin, testified that as the damage to apartment was being discussed by defendant and Manns, the former became enraged when Manns denied responsibility, drew a pistol and shot Manns in the eye at close range. For the defense, Anderson, Smallwood, and defendant testified that Manns became belligerent out in the street; that he drew a yellow-handled switchblade knife as he was having heated words with Anderson; that defendant shouted a warning to Anderson about the knife; and that defendant drew his gun and shot Manns only after the latter had turned from Anderson and advanced toward defendant with the knife. Manns denied having a knife in his possession that evening, while Davis said that he saw nothing in Mann's hand, and related that Manns was turning away and

starting to go back into the tavern when the shot was fired. The prosecution witnesses, however, testified that Manns customarily carried a yellow-handled switchblade knife and both Hattie Wade and Anderson stated they had been recently attacked by Manns with such a knife.

Milton Deas, a Chicago police officer, was driving by the tavern with his partner, officer Lewis DeNye, just as the shot was fired. The officers stopped and upon seeing the wounded man on the ground, placed all present under arrest. DeNye, who was hospitalized at the time of the trial, searched the persons arrested and, according to Deas, found three knives. One of these, similar to a lineoleum cutting knife, was taken from the person of Davis. A small calibre automatic pistol was found nearby in the snow, but it is to be gathered from the record that no trace was found of the yellow-handled knife alleged to have been wielded by Manns. Still another police officer who was at the scene, Curtis Jackson, testified that he had searched Manns and had found no weapons. The same officer questioned defendant at the station, at which time defendant denied that he shot Manns, or that he had any knowledge of the incident.

Defendant's trial was commenced on April 24, 1961, but, after one prosecution witness had been heard, was continued to May 1 on defendant's motion after some question arose as to whether the police had the yellow-handled knife in their possession. On May 1, in response to a *subpoena duces tecum,* the police produced three knives in court but a yellow-handled switchblade knife was not included. Officer Clifford Martin testified that he had received the three knives produced from officer DeNye on the night of the shooting; that the knives had not been inventoried, as was the gun, but had been kept in Martin's locker at the station; and that he had never seen or been given a yellow-handled knife. It was stipulated that one of the knives produced was the one taken from Davis, and officer Deas testified that the knives produced looked like those seized at the scene

of the shooting. In addition, Deas said he had not seen the yellow-handled knife. As opposed to the prosecution witnesses, however, defendant and Anderson testified that they had seen the yellow-handled knife at the station after their arrest, and Anderson further testified that none of the knives produced were among those he had seen at the station. Defendant requested and was granted a further continuance to May 4, but a motion for another continuance on that date was denied and the trial concluded.

Defendant's contentions that the trial court erred in refusing to grant a further continuance to permit an investigation into the matter of the knives, and that he was denied a fair trial because the prosecution did not produce the yellow-handled knife, are both predicated on the assumptions that Manns was in fact armed with such a weapon, and that the police did in fact recover it at the scene of the crime. However, the evidence as to both questions was in conflict, the resolution of which depended in turn upon a determination of the credibility of the opposing witnesses, a function committed to the trial court in this case. Viewed in this light, and discovering no basis to substitute our estimate of the witnesses for that of the trial court, we find no error in the respects charged. The granting of a continuance to permit further preparation for trial rests within the judicial discretion of the trial court, (*People* v. *Poland,* 22 Ill.2d 175; *People* v. *Stokes,* 18 Ill.2d 371,) and we see no abuse of discretion in a refusal to grant a third continuance to search for evidence where two continuances for the same purpose had already proved fruitless, and where the trial court was confronted with credible testimony that such evidence did not in fact exist. In like manner, we cannot say the prosecution withheld evidence and so denied defendant a fair trial. Accepting the testimony of the prosecution's witnesses as true, as the trial court did, there is reason to conclude that a yellow-handled knife was never in the possession of the police or the prosecuting authorities.

Nor is there merit to defendant's further contention that the trial judge misapprehended the law of self-defense. When the entire record is read, rather than the isolated passages relied upon by defendant, and when it is further considered that the question whether Manns wielded a knife was in conflict, it emerges to our satisfaction that the court was fully cognizant of the elements of such a defense, and aware of his duty to determine the matter as a question of fact. See: *People* v. *Jordan,* 18 Ill.2d 489, 494.

The defendant's final contention, *viz.,* that the evidence fails to sustain his conviction, is equally untenable. Defendant admitted firing the shot which wounded Manns and, in the absence of such proof by the People, it was incumbent upon defendant to show circumstances justifying, mitigating, or excusing his act. (*People* v. *Washington,* 27 Ill.2d 104.) And while defendant and his witnesses did testify that Manns was attacking with a knife when the shot was fired, their testimony was directly contradicted by that of Manns and Davis and weakened by the failure of the police, who were almost instantly on the scene, to find the weapon attributed to Manns. Further weighing against the claim of self-defense is the circumstance that defendant first denied all knowledge of the shooting. We have repeatedly held that where a cause is tried without a jury, the law commits to the trial court the determination of the credibility of the witnesses and the weight to be afforded their testimony, and that where the evidence is merely conflicting a reviewing court will not substitute its judgment for that of the trier of fact. (*People* v. *Dillon,* 24 Ill.2d 122.) As the record comes to us, this principle has singular application here.

Our review shows that defendant's guilt was established beyond a reasonable doubt and that there was no reversible error. Accordingly, the judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*