(No. 38479.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LUCIOUS KEES, Plaintiff in Error.

*Opinion filed March 18, 1965.*

SCHAEFER, J., KLINGBIEL, C.J., and SOLFISBURG, J., dissenting.

JEROME T. BRENNAN, of Chicago, appointed by the court, for plaintiff in error.

WILIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED

G. LEACH and GEORGE W. KENNEY, Assistant Attorneys General, and ELMER C. KISSANE and MATTHEW J. MORAN, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE DAILY delivered the opinion of the court:

After a bench trial in the criminal court of Cook County, the defendant, Lucious Kees, was found guilty of armed robbery and sentenced to the penitentiary for a term of two to five years. By this writ of error, granted under Rule 65—I, he seeks reversal and remandment for a new trial on the ground that rulings of the trial court and the incompetency of his appointed counsel deprived him of due process of law.

At approximately 4:00 A.M. on Friday, August 17, 1962, John W. Brooks was working alone at a gasoline station located in the city of Chicago. While he was attending to a customer, a man whom he then knew only as "Lucious," but whom he subsequently identified as defendant, walked up to the station and engaged in a conversation with the two men. "Lucious," it appears, had been in the station on occasions in the past to purchase cigarettes or soda pop and was known by Brooks to such extent. After a period of about five minutes the customer who was originally in the station departed and several minutes after that, according to Brooks, defendant said: "I am going to stick you up" and drew a revolver. After Brooks had complied with commands to put his money into defendant's coat pocket, the latter fled taking $40 to $45. Police were immediately summoned and Brooks was questioned by officers Davis and Hill. And while Brooks signed no statement, then or afterwards, it appears that the officers took notes of what was said and later filed a written report.

Early in the evening of the same day, Brooks had a telephone conversation with detective Russell Miller, an officer assigned to the robbery unit for the area, who had also known defendant for some time but only by the name

of "Lucious." Thereafter, around 8:15 P.M., Miller and other officers located defendant in a tavern, and although he denied any knowledge of the crime he agreed to accompany the officers to a police station. There, he was questioned for a few minutes and, at about 9:45 P.M., was selected by Brooks from a lineup of six men as the person who had committed the robbery. Following this, defendant was questioned for about ten minutes and then placed in a cell overnight. At 6:00 P.M. the next evening, Saturday, August 18, defendant was again questioned by Miller, whose tour of duty had started at 4:00 P.M., and at such time defendant signed a written confession, even though he was expressly warned beforehand that the confession "will be used in court against you." On the morning of the next day, Sunday, August 19, he was taken before a magistrate for a preliminary hearing.

At the trial defendant acknowledged that he knew Brooks and that he had been around the gasoline station before, but denied the offense and testified that he had been drinking with friends at the time of the robbery. Further, he admitted that he had signed the confession, which had been introduced into evidence by the People, but stated that he had been beaten by Miller, that the confession was false, and that he had signed it only to forestall further mistreatment. On rebuttal, Miller denied that he or any other person had exercised physical coercion of any kind. We are constrained to add that the cross-examination of defendant greatly weakened his claim.

The charge that the confession was extracted by means of police brutality has been abandoned and is not pursued in this court. Rather, it is first urged upon the basis of the *McNabb* rule, (see: *McNabb* v. *United States*, 318 U.S. 332, 87 L. ed. 819; *Mallory* v. *United States*, 354 U.S. 449, 1 L. ed. 2d 1479,) that the confession was inadmissible in evidence because it was obtained while defendant was being illegally detained. Although it is our opinion the evidence

here does not show such unnecessary and unreasonable delay as to have made defendant's detention illegal within the *McNabb* rule, (*cf. People* v. *Jackson,* 23 Ill.2d 274,) it is enough to say that the rule is one of Federal procedure which this court has consistently refused to adopt, (*People* v. *Hall,* 413 Ill. 615; *People* v. *Jackson,* 23 Ill.2d 274; *People* v. *Stacey,* 25 Ill.2d 258; *People* v. *Melquist,* 26 Ill.2d 22; *People* v. *Reader,* 26 Ill.2d 210,) and which, in *Gallegos* v. *Nebraska,* 342 U.S. 55, 63-64, 96 L. ed. 86, 93-94, has been expressly held not to extend to State prosecutions as a requirement of the fourteenth amendment. We find nothing in defendant's arguments, or in his arduous suggestion that *Gallegos* has been overruled by implication, to cause us to now adopt the rule or to conclude that due process requires its adoption.

Relying upon *Escobedo* v. *Illinois,* 378 U.S. 478, 12 L. ed. 2d 977, it is next contended that the confession was inadmissible because it was obtained when defendant was without the benefit of legal counsel. Stated another way, defendant sees *Escobedo* as holding that a confession otherwise voluntary is not admissible unless the accused either had the benefit of counsel when it was made, or had made an intelligent waiver of counsel. Concededly, *Escobedo* has provoked conflicting constructions, (as yet to be resolved by the United States Supreme Court,) some of which may be taken as supporting defendant's position. (*E.g., State* v. *Neely,* —— Ore. ——, 395 P.2d 557; *People* v. *Parisi,* 249 N.Y.S. 2d 193; *Commonwealth* v. *Coyle,* 415 Pa. 379, 203 A. 2d 782.) This court, however, in *People* v. *Hartgraves,* 31 Ill.2d 375, has aligned itself with those courts which have construed *Escobedo* to be limited to the peculiar facts of the case, and have rejected it as promulgating the sweeping rule that a confession may not be received if made by an accused without counsel, or unless the right to counsel has been intelligently waived. (See: *People* v,

*Agar,* 253 N.Y.S. 2d 761; *Browne* v. *State,* 24 Wis.2d 491, 131 N.W.2d 169; *Pece* v. *Cox,* 74 N.M. 591, 396 P.2d 422; *Davis* v. *State,* 236 Md. 389, 204 A. 2d 76.) For this reason, and because the facts here neither require nor permit *Escobedo* to control, we conclude defendant's confession was not inadmissible on such ground.

During the cross-examination of Brooks, the complaining witness, defense counsel requested and was furnished by the prosecution with the written report made by officers Davis and Hill. Upon its receipt counsel then inquired of Brooks if he had not told the investigating officers that two men had committed the robbery, and the witness denied that he had, explaining he had said only that there were two men at the station. Subsequently, after the People's case was closed, defendant moved to continue the trial for one day in order that he could subpoena Davis and Hill as witnesses. And while counsel stated his purpose was to impeach Brooks by such witnesses, he conceded that he had not talked to the officers and did not know what their testimony would be. The trial court denied the motion, indicating his belief that counsel had not been diligent, whereupon defense counsel, *reading from the report,* made an offer of proof that if Davis and Hill were called as witnesses, they would testify Brooks had told them he had been robbed by two men. In short, the contradiction which defendant sought to establish by the two witnesses was patently obvious in their written report. It is now contended that the refusal to grant the continuance operated to deprive defendant of his constitutional right to compel the attendance of witnesses at his trial. See: Ill. Const., 1870, art. II, sec. 9.

It has long been established that the granting of a continuance during trial is purely a matter of discretion resting with the trial court, and that its exercise will not be disturbed on review unless there has been a manifest abuse

of discretion. (*United States* v. *Echeles,* (7th cir.) 222 F.2d 144, 153; *People* v. *McCreary,* 29 Ill.2d 295; Ill. Rev. Stat. 1963, chap. 38, pars. 114—4(e) and (f).) We find no abuse of discretion in this case, nor, under the circumstances, do we believe there was any infringement upon defendant's constitutional right. Not only was defendant unaware of what the testimony of the witnesses would be, (*cf. People* v. *Robinson,* 22 Ill.2d 162,) but it would appear that had a proper use been made of the written report the need for calling the officers to establish the purported contradiction would never have arisen. Furthermore, this was a bench trial and it appears the trial court was in fact fully informed of the inconsistency between the testimony of Brooks and the report of the officers, and thus was in a position to test the credibility of the witness on such basis. (*Cf. People* v. *Carter,* 24 Ill.2d 413.) No contention is made that the proof does not establish guilt beyond a reasonable doubt, and it is difficult to see how the testimony of Davis and Hill would have produced any other result. Particularly is this so since defendant's confession stated that he had committed the robbery alone, and since defendant conceded that Brooks had known him before the robbery, making positive identification possible.

For his final contention defendant asserts that the failure of his counsel to properly utilize the written report or to diligently secure the attendance of Davis and Hill as witnesses was incompetence which deprived him of due process of law. We are not prepared to say, however, that such omissions reduced the trial to a farce or rendered defendant's representation so ineffective as to offend the requirement of due process. (*Cf. People* v. *Turner,* 29 Ill.2d 379; *People* v. *Hall,* 27 Ill.2d 501.) What is more, to gain reversal on such ground it must also appear that the accused was substantially prejudiced by the incompetency of counsel, and that a different outcome would probably have resulted. (*People* v. *Palmer,* 31 Ill.2d 58; *People* v. *Dean,* 31

Ill.2d 214.) As we have indicated, the alleged derelictions of counsel could not have substantially prejudiced defendant, or seriously affected the outcome of the trial.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*

Mr. JUSTICE SCHAEFER dissenting:

To find the defendant guilty it is necessary to believe that he went to a filling station where he was known to the attendant, engaged the attendant and a customer in a conversation for about five minutes and then, after the customer had left, held up the attendant. It is possible, of course, that he did so, but it does not seem very likely. The improbable story told by Brooks, the filling station attendant, emphasizes the prejudicial effect of the trial court's refusal to permit the defendant to impeach that story by showing that immediately after the robbery Brooks had told the investigating police officers that he had been held up not by one man, but by two.

The defendant seems to have been caught between contradictory theories adopted by the trial court and by the majority of this court. The trial court apparently felt that the defendant's counsel had not been diligent because he did not obtain the impeaching statement until the witness Brooks had testified. But under our decisions the defendant was not entitled to the statement until the witness had taken the stand and testified. *People* v. *Neiman,* 30 Ill.2d 393; *People* v. *Edmunds,* 30 Ill.2d 538; *People* v. *Wolff,* 19 Ill.2d 318; *People* v. *Moses,* 11 Ill.2d 84.

It is clear that the majority of this court does not adopt the theory of the trial court, but beyond that it is difficult to know upon just what ground it proceeds. It points out that the defendant's counsel did not know what the testimony of the police officers would be, but the significance of that lack of knowledge is not apparent. *People* v. *Robinson,*

22 Ill.2d 162, is clearly not in point. I simply do not know what is meant by the statement in the majority opinion, "* * * it would appear that had a proper use been made of the written report the need for calling the officers to establish the purported contradiction would never have arisen." The witness who was being impeached had denied that he had stated to the investigating officers that he had been held up by two men. Impeachment could not be completed without the testimony of the officers to whom the alleged contradictory statement was made.

In my opinion it was prejudicial error to deny the defendant the opportunity to impeach the testimony of the only occurrence witness offered by the prosecution.

KLINGBIEL, C.J., and SOLFISBURG, J., join in this dissent.