**People of the State of Illinois, Defendant in Error, v. Claude Williams, Plaintiff in Error.**

Gen. No. 50,336.

First District, Third Division.

March 10, 1966.

Sheldon Brottman, of Chicago, for plaintiff in error.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James B. Klein, Assistant State's Attorneys, of counsel), for defendant in error.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

This case involves a judgment of conviction in the criminal court of Cook County of defendant, Claude Williams, for the crimes of burglary and armed robbery, for which he was sentenced to a term of not less than three years nor more than ten years for each offense in the Illinois State Penitentiary. The sentences were ordered to run concurrently. The causes were tried by the court without a jury. The charges were contained in separate indictments, which indictments were consolidated for the trial.

The defendant raises the point that the evidence adduced by the People in these causes to prove the identity of the defendant as the person who committed the crimes charged is "weak, contrary and unreliable," compelling reversal of the convictions.

On November 17, 1961, during the early morning hours, the C & F Lounge, a tavern, was burglarized. Thomas Cherry, the night watchman, was in a booth at the rear of the tavern sleeping. At about 1:30 a. m. on that day,

Curry, the bartender, and Fields, the owner, left the tavern, locking Cherry inside. Fields had given Cherry a gun for the protection of the tavern. After Curry and Fields left the tavern, Cherry cleaned up and then went to sleep. Later Cherry was awakened by the sound of bottles clicking together. As he sat up there was a man standing alongside of him and another man was in the front of the tavern. The man standing alongside of Cherry told the man in the front that Cherry was awake. The man in the front started to walk towards Cherry and he was identified as the defendant, Claude Williams. The defendant, while walking toward Cherry, was observed by Cherry when he was no more than ten feet away. There was a flashing white neon sign three and one-half to four feet long over the bar. Cherry was tied by the man standing alongside of him, and his pockets were emptied and his wallet taken. He had the gun in his coat, but as he was being tied up by the man it fell to the floor. The man, whom Cherry identified as the defendant, told the other man in the tavern to keep Cherry's head down. The men remained in the tavern about fifteen minutes and it sounded to Cherry as if they were stacking bottles in cases. After the men left Cherry got loose and called Curry, the bartender. Cherry also examined the premises and found that the whiskey was gone, the cigarette machine open and the coin box on the floor. The gun which had fallen out of Cherry's pocket was also gone.

The defendant was arrested on November 17, 1961, some nineteen hours following the robbery and burglary, at an apartment where his wife was then living.

A witness for the People, Dorothy Gilbert, testified that Louise Williams, the wife of the defendant, had called the police to the apartment. Dorothy Gilbert also testified that the defendant had brought a gun to her home on the evening of November 17, 1961, and that two police officers came to her home that evening, one

of whom was Officer Bouey. She gave him the gun the defendant brought to her home. She also testified that Claude Williams had had such a gun when he was at her house that Friday night and that he had put the gun in his wife's lap while they were in the front room. They both went into the witness' bedroom with it. When the defendant was ready to go he asked his wife for the gun. The witness testified that Williams' wife told him to see the "houselady." The witness then went into the bedroom and gave the gun back to the defendant. While they were standing in the room talking the police knocked on the door and the defendant gave her "back the gun in my lap. I dropped it in the dresser." She testified that she took the police officers into the bedroom and gave the gun to them. The gun exhibited in court looked like the one she gave to him.

Curry, the bartender, testified that when he had locked the tavern door there was whiskey at the bar and the cigarette machine was closed.

Fields, the owner of the tavern, testified that the gun introduced into evidence was the same gun that he had given to Cherry. He identified the gun by the serial number, and also testified that five cases of whiskey were taken and the back door of the tavern was broken off its hinges.

The defendant testified that between 11:00 p. m. on November 16, 1961, and 8:00 a. m. on November 17, 1961, he was home in bed. He did not break into the C & F Lounge and did not rob Cherry. He admitted seeing his wife on November 17, 1961, at Mrs. Gilbert's apartment and that he gave Mrs. Gilbert the gun he had with him. He testified that People's exhibit No. 1 (the gun) looked something like the gun he brought with him. He further stated that he bought the gun a week earlier from Son Williams, who is living in Mississippi. He was arrested on the 17th of November and taken to the police station. He was put in a lineup at the station about

4:00 p. m. with six or eight other men. He testified that he saw Cherry at the station on the 17th with two officers while they were sitting there talking. This statement was denied by Cherry, who stated that he had not seen the defendant at the station prior to the lineup. The defendant further testified that he had purchased the gun from Son Williams, a cousin, a week prior to the burglary, but when asked if he had made the following statement: "I got the gun on the morning of the 17th of November, 1961. I got it from my cousin, Son Williams. He gave it to me to sell for him," he answered: "I did."

The defense called a Mrs. Johnson, who, on an offer of proof, would testify that she talked with someone who purported to be Thomas Cherry on the telephone on February 2, 1962. That the person with whom she talked said he had his head down all the time during the burglary and robbery and that he had never seen anyone. Cherry denied ever having made the statement that he had not seen anyone at the time of the burglary and robbery but did admit that some woman had called him on the phone and questioned him about the burglary and robbery.

Officer Bouey, on behalf of the State, testified that on November 17, 1961, he went to 3923 West 19th Street at 11:40 p. m. and saw Mrs. Gilbert. She took him in and pointed to the defendant, saying he had two guns. Officer Bouey went with her into the front room and she gave him the two guns; that the gun offered in evidence as People's exhibit No. 1 was one of the guns he had received from Mrs. Gilbert. He identified the weapon by his initials which he had scratched thereon when he received the gun from Mrs. Gilbert. The People thereafter introduced a prior conviction for burglary in the state of Mississippi for which the defendant was sentenced for three years in the State Penitentiary.

■ It has been repeatedly held that the testimony of one witness alone, if positive and credible, is sufficient to convict, even though such testimony be contradicted by the accused.

■ ■ In People v. Owens, 23 Ill2d 534, 179 NE2d 630, the court held that the requirement that the defendant's guilt be proved beyond a reasonable doubt did not mean that the trier of the fact must disregard the inferences that flow naturally from the evidence before it. In that case it was also held that the trier of the fact is not required to search out a series of potential explanations compatible with innocence and elevate them to the status of a reasonable doubt. (People v. Sullivan, 22 Ill2d 122, 124, 174 NE2d 860; People v. Russell, 17 Ill2d 328, 161 NE2d 309.

The defendant cites People v. Donald, 29 Ill2d 283, 194 NE2d 227, in support of his statement that in weighing evidence of identification, the attendant circumstances, along with the probability or improbability of an adequate opportunity for a definite identification must be considered. It is also stated in that case that the positive identification of one witness who had ample opportunity for observation may be sufficient to support a conviction even though such testimony is contradicted by the accused.

The defendant also cites People v. Peck, 358 Ill 642, 193 NE 609; People v. Fiorita, 339 Ill 78, 170 NE 690, in support of the proposition that the burden was on the People not only to prove, beyond a reasonable doubt, the commission of the crime charged, but they were further required to prove in the same degree that defendant was the person who committed it.

■ ■ In the instant case the testimony of the witness Cherry as to identification is not improbable and it was positive. The tavern was sufficiently lighted by the neon sign above the bar to afford Cherry an opportunity

to see and identify the defendant. Also, Cherry, himself, testified that he saw him for a full minute. There was no question but that his testimony as to identification was positive and specific. It was not broken down on cross-examination, and where a case is tried by the court without a jury it is the office of the trial court to determine the credibility of the witnesses, and the weight to be afforded their testimony, and where the evidence is merely conflicting, an Appellate Court will not substitute its judgment for that of the trier of fact. People v. Clark, 30 Ill2d 216, 195 NE2d 631; People v. McCreary, 29 Ill2d 295, 194 NE2d 233; People v. Dillon, 24 Ill2d 122, 180 NE2d 503.

 Again the courts have held that identification need not be positive to support a conviction, its weight being a question for the trier of fact to be determined in connection with the other circumstances of the case. People v. Oswald, 26 Ill2d 567, 187 NE2d 685. However, we feel that the testimony of Cherry was of a positive nature and that we cannot substitute our judgment for that of the trial judge. The defendant's stories that he had bought the gun a week before the burglary, and later, on the morning of the burglary, somebody gave it to him to sell, are not only inconsistent and highly improbable but tend to make his testimony unworthy of belief. In this case there was not only evidence as to identification, from which the trial court could have concluded that the defendant was the perpetrator of the crimes charged, but also this defendant was in possession of part of the proceeds of the burglary. The identification of the defendant, taken together with the possession of part of the proceeds of the burglary by the defendant, and his story of how he received it, together with the fact of his prior conviction, were, in our opinion, sufficient to justify the trial court in not believing the alibi of the defendant.

We are of the opinion that the defendant received a fair trial and that the judgments of the trial court must be affirmed.

Affirmed.

SCHWARTZ and DEMPSEY, JJ., concur.