(No. 36748.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JESSIE NORFLEET, Plaintiff in Error.

*Opinion filed November 26, 1963.*

FRANCIS J. GERLITS of Chicago, appointed by the court, (FREDERICK W. TEMPLE, of counsel,) for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and ELMER C. KISSANE and JOHN J. O'TOOLE, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SOLFISBURG delivered the opinion of the court:

The defendant, Jessie Norfleet, was tried before the court in the criminal court of Cook County and convicted of the murder of Andrew Mulligan. He was sentenced to 20 years in the penitentiary, and he prosecutes this writ of error to review that judgment contending, *inter alia,* that the court erred in admitting his purported confession.

On August 8, 1959, at 11:30 P.M. the naked body of Andrew Mulligan was found beaten to death in a garbage can at the rear of 1310 South Peoria Street in Chicago. One Roberto Ezell testified that she had seen Jessie take the deceased into the alley between 9:00 and 11:30 that night. She reported this to the police after she had learned her brother was being questioned about a murder. She then took police officers Turner and Spooner to Jessie's apartment at 1310 South Peoria, where they found the defendant, and the officers arrested him.

Turner testified that on the way to the station the defendant stated: "I put him in a garbage can, but I did not know I had killed him because he was kicking when I left."

At the police station the defendant was interrogated by Adlert Cartman, an assistant State's Attorney. All the questions and answers were taken down and transcribed by Donald Flannery, a court reporter, but the transcript was not signed by the defendant. In essence the transcribed statement indicated that the deceased called the defendant an obscene name, and defendant took him in the alley to teach him a lesson. In the alley the defendant beat the deceased with a board, stripped him and placed him head down in a garbage can. This confession was confirmed by Cartman, officer Giralamo, Roberto Ezell and officer Turner. While the court reporter could not identify the defendant by sight at the trial, he testified that the transcribed confession accurately stated what the defendant said and the defendant acknowledged the truth of his answers.

Prior to trial the defendant moved to suppress his confession. In support of the motion the defendant testified that he had been beaten by officer Turner, both when arrested and at the police station, and further that although the statement was taken, he did not give the answers shown in the transcript. He testified that he was beaten fifteen times, and that officer Turner told him what to say, and defendant told Turner, "I'll do anything I can to stop you all from beating me."

At the conclusion of the defendant's testimony on the motion to suppress, the State asked the motion be denied without hearing further evidence. Thereupon the trial court denied the motion to suppress on the ground that defendant denied making any confession.

This ruling of the trial court was apparently based upon *People* v. *Hegovic*, 348 Ill. 58. In that case, decided in 1932, it was held that if a defendant denies making any confession, it is not necessary for the trial court to determine the

question of the voluntary nature of the alleged confession. Thereafter the United States Supreme Court considered the rule of the *Hegovic* case in *Lee* v. *Mississippi,* 332 U.S. 742, 92 L. ed. 330. The State of Mississippi there argued that since the defendant denied making any confession, he could not contend that an alleged confession was induced by fear. The United States Supreme Court reversed Lee's conviction stating at 332 U.S. 742, 744-745: "The incomplete record before us precludes our determination of whether petitioner did deny in the trial court that he had confessed the crime. But assuming that he did so testify, we cannot agree with the court below that he was thereby estopped from asserting his constitutional right to due process of law. The important fact is that the oral confession was introduced, admitted and used as evidence of petitioner's guilt. Not only may this confession have been influential in inducing the jury's verdict, but it formed an essential part of the evidentiary basis of the conviction now under review. His alleged denial of the confession went only to the original issue of whether he actually made the confession, an issue that is no longer open. That question was at most a disputed one; but the jury resolved the matter against petitioner and, like the court below, we accept that determination. The sole concern now is with the validity of the conviction based upon the use of the oral confession. The due process clause of the Fourteenth Amendment invalidates a state court conviction grounded in whole or in part upon a confession which is the product of other than reasoned and voluntary choice. A conviction resulting from such use of a coerced confession, however, is no less void because the accused testified at some point in the proceeding that he had never in fact confessed, voluntarily or involuntarily. Testimony of that nature can hardly legalize a procedure which conflicts with the accepted principles of due process. And since our constitutional system permits a conviction to be sanctioned only if in conformity with those principles, inconsistent testimony as to

the confession should not and cannot preclude the accused from raising the due process issue in an appropriate manner. *White* v. *Texas*, 310 U.S. 530, 531, 532, 84 L. ed. 1342, 1344, 1345, 60 S. Ct. 1032. Indeed, such a foreclosure of the right to complain 'of a wrong so fundamental that it made the whole proceeding a mere pretense of a trial and rendered the conviction and sentence wholly void,' *Brown* v. *Mississippi*, 297 U.S. 278, 286, 80 L. ed. 682, 687, 56 S. Ct. 461, would itself be a denial of due process of law."

It is our conclusion that the *Lee* case has abrogated the *Hegovic* rule, and the trial court erred in denying defendant Norfleet a full hearing on the voluntary nature of the alleged confession.

The State, however, also argues that defendant waived this contention in that he failed to object to the denial of the motion to suppress, and failed to raise the constitutional issue in the trial court.

Upon the denial of defendant's motion to suppress, there was no reason for the defendant to note an objection or exception to this adverse ruling. *People* v. *Williams*, 28 Ill.2d 104, cited by the State, is not in point. In the *Williams* case there was no ruling on a motion to suppress, and no objection to testimony as to alleged admissions of the defendant, and we merely held that the failure to object to evidence waives the right to complain of its admission. In the case at bar the motion to suppress preserved defendant's contentions.

We further feel that defendant's motion to suppress and his motion for new trial were sufficient to raise the constitutional issues of due process upon appeal.

The State also points out that upon the bench trial substantial evidence was introduced rebutting defendant's claim that brutality induced his confession. However, because of the trial court's prior ruling, it had no occasion to determine the voluntariness of the confession.

Because of the view we have taken of this case it is un-

necessary to consider defendant's other allegations of error which relate to the admission of the confession and oral statements into evidence, and the sufficiency of proof.

We, therefore, hold that the judgment of the trial court must be reversed and the cause remanded.

*Reversed and remanded.*