Chester NELSON, Appellant,

v.

PEOPLE OF the STATE OF CALIFOR-
NIA, Robert A. Heinze, Warden,
et al., Appellee.

No. 19463.

United States Court of Appeals
Ninth Circuit.

May 26, 1965.

Rehearing Denied June 22, 1965.

**74**

Chester Nelson, in pro. per.

Thomas C. Lynch, Atty. Gen. of California, Doris H. Maier, Asst. Atty. Gen., Richard K. Turner, Deputy Atty. Gen., Sacramento, Cal., for appellee.

Before POPE, HAMLEY and DUNI-WAY, Circuit Judges.

DUNIWAY, Circuit Judge:

Nelson appeals from an order denying his petition for a writ of habeas corpus. He is a California State prisoner, convicted in the California Superior Court, County of Los Angeles, of a violation of section 11530.5 of the California Health and Safety Code, a felony. It was also found that he had been convicted of a prior offense, and he was sentenced accordingly on June 19, 1962. His appeal to the California District Court of Appeal was unsuccessful. People v. Nelson, 1963, 218 Cal.App.2d 359, 32 Cal.Rptr. 675. A petition for habeas corpus, filed in the California Supreme Court, was denied, without opinion, on October 16, 1963. Nelson then filed the present petition in the United States District Court. That court issued an order to show cause, and a return and a motion to dismiss, a traverse and a supplemental traverse were filed. The District Court, without further hearing, ordered that the petition be dismissed. It denied a petition for a rehearing, but granted a certificate of probable cause.

Although he states it in many ways, Nelson's basic contention is that there was introduced against him at his trial evidence obtained in violation of his rights under the Fourth Amendment to the Constitution of the United States in that there was an unlawful search of his apartment and seizure of contraband by the police. He also claims that there was no probable cause for his arrest.

The record of Nelson's trial in the California Superior Court was before the District Court, and it shows the following facts: On the morning of February 15, 1962 Officer Loeber, a Los Angeles policeman assigned to the narcotics division, accompanied by Officers Drees and Beckman of the same division, and by Agent Greppin of the United States Customs Service, went to an apartment building located at 1974 Raymond Street in Los Angeles. They proceeded to Apartment 208 and knocked on the door. One Virginia Thomas, who was later named as a co-defendant with Nelson in the State information, opened the door. Loeber showed his badge and told her that he and Greppin were police officers and wanted to talk to her. She told them to come in, which they did, entering a large room which was a combination living and bedroom. At one end of this room was a kitchen and at the other a bathroom and a dressing alcove. Loeber told Thomas that the police knew that she and her boy friend were selling narcotics from the apartment, which she denied. Loeber then asked her if she would mind if he and Greppin searched the premises, and she said: "No, go ahead." Loeber and Greppin went into the kitchen, where they saw, through the glass door of a cupboard, a brown package that appeared to be in brick form, and several white packages. Loeber opened a corner of the brown package and found that it contained a leafy substance, marijuana.

Some time later, Nelson and another man arrived at the door of the apartment. The police opened the door and one of them asked him if he was "Chester" [1] and whether he and Thomas lived there together. He said that he was, and that they did. He was then arrested and

---

1. The police saw the name Chester on some papers in the apartment. They had not known Thomas' or appellant's names when they went to the apartment.

asked about the marijuana. He stated that it was all that he had, and that Thomas didn't know anything about it. Later on the same day, at the police station, he said that the marijuana found in the apartment was the last of 38 pounds that he had had buried since 1958 and that he had been gradually selling off in "cans" and "half cans."

The package or brick of marijuana, and the other packages, were produced at the trial and received in evidence. Loeber testified that he had been assigned to the narcotics detail for a little over four years, that he was familiar with the manner in which marijuana is commonly packaged in the illegal marijuana traffic in Los Angeles, that he had seen marijuana packaged in this manner before, and that such a package is commonly called a "kilo brick," or "key." He testified that this is the common method used by a wholesaler in selling to a retailer or to a sub-seller.

Miss Thomas took the stand in her own behalf and testified that Loeber correctly and truthfully stated the facts about arresting her, and the conversations he had with her. She denied that she knew that the marijuana was in the apartment. She also testified that Nelson had rented the apartment about two months before the arrest, that she had moved in with him at that time, and that she and he were living there "sort of as husband and wife." She testified that he lived there continuously up to the time of the arrest.

Nelson also took the stand. He testified that in February, 1962, at the time of the arrest, he was living at another address, the home of his brother. He said that he moved out of the apartment on Raymond Street about the 27th or 28th of January. However, he did not take all of his clothing with him. He denied that the marijuana was his. He paid the rent for the apartment, and he and Thomas had lived there together up to the latter part of January. He said that he had rented the apartment during the preceding June and that she moved in with him about August, July, August,

or September; he was not sure. In response to a question as to whether he and Thomas were living in the apartment as husband and wife, he said: "Being the situation as it was, her and I, I felt it was assumed it would be man and wife. At least I felt that way about her." He testified that she had the keys. The fact that Thomas lived with Nelson "at his house" was corroborated by a witness, Conner, called by Nelson.

Nelson was represented by a deputy Public Defender of Los Angeles County. Thomas had separate counsel. After Loeber had completed his direct testimony, he was first cross-examined by counsel for Thomas and was asked whether, when he went to the apartment, he had any information that Mr. Nelson was dealing in narcotics out of that apartment. Nelson's counsel objected on the ground that the subject was immaterial. This objection was sustained, and the matter was not further explored. At no time during the trial, either by objection to any testimony, or by motion, or in any other way, did Nelson's counsel raise or even suggest the question as to whether the search that led to the discovery of the narcotic in Nelson's apartment, or his arrest, in any way violated any of his constitutional rights.

On Nelson's appeal, this question was raised and argued. The State argued that the question was not properly before the court, not having been raised in the court below, but it also argued the merits of the question. The District Court of Appeal, as appears from its opinion, passed upon the question and held that Loeber's testimony was sufficient to sustain a finding by the trial court that Thomas freely consented to the entry and subsequent search and that Nelson's constitutional rights had not been violated.

In his habeas corpus petition, Nelson alleges certain things that do not appear in the trial transcript. These allegations are scattered throughout his petition, traverse and supplemental traverse, and are frequently repeated, but with variant phrasing. The following is

necessarily an abbreviated summary of them: The officers, before they went to the apartment, had a tip from an informer that narcotics were being sold from the apartment. They did not, however, have sufficient information to constitute probable cause, either for a search warrant or an arrest or a warrant of arrest. They did not seek, and did not have, either type of warrant.[2] Thomas denies that she gave the officers permission to search. She knew nothing about the law; she was placed in fear of her life, and of arrest and bodily harm, by the officers, and if she did tell them to go ahead and search, she was coerced into doing so. The officers went to the apartment for the purpose of making a search. They entered under color of office, and by subterfuge, and this, too, coerced Thomas. She was a weak and defenseless woman, and, if she gave permission, she did not do so freely or voluntarily, but only in submission to the authority of the officers. She was cross-questioned by them until her will was overborne, she was nervous, and wept; she was under mental strain and did not know what she had said. She was not permitted to call friends, nor an attorney. It is not claimed, however, that she either wanted or asked to call anyone.

The District Court in this habeas corpus proceeding did not reach the merits of Nelson's contention as to his constitutional rights. In an opinion, it pointed out that under California law it is well settled that unless a claim that evidence was illegally obtained is raised by appropriate objection, it may not be raised for the first time on appeal, citing People v. Lyons, 204 Cal.App.2d 364, 22 Cal.Rptr. 327; People v. Pruitt, 155 Cal.App.2d 585, 318 P.2d 552; People v. Brittain,

149 Cal.App.2d 201, 308 P.2d 38, and People v. Kelsey, 140 Cal.App.2d 722, 295 P.2d 462. The court concluded from its examination of the transcript that Nelson had deliberately by-passed the required state procedure. It pointed out that on three separate occasions at the trial the People offered in evidence articles obtained from the search of the apartment, and that on each occasion there was no objection. It also noted that Nelson's counsel had objected, on the ground of immateriality, to an inquiry which would have a bearing on the question of probable cause, and that, if probable cause had been made an issue, additional testimony, probably quite harmful to Nelson, might have been admitted, whereas, by objecting as he did, Nelson's counsel succeeded in having it excluded. It stated that competent counsel could well have concluded, on the basis of the evidence, that the constitutional point that Nelson seeks to raise was not likely to be sustained, as is evidenced by the decision of the District Court of Appeal in Nelson's own case. It concluded that Nelson had been competently represented by his counsel. It also pointed out that Nelson at no time contended that in handling the matter as he did, his counsel was acting contrary to Nelson's wishes. From all of the foregoing the court concluded that Nelson had intentionally by-passed the orderly state procedure for presenting his claim of an unlawful search and seizure and it denied his petition for a writ of habeas corpus on that ground.

On this appeal, Nelson's basic legal contentions are two: that the search was illegal, so that the evidence as to the marijuana should have been excluded, and that his arrest was illegal because,

2. Under California law, it is presumed that officers acted lawfully, and that they had both a proper search warrant and a proper warrant of arrest. The defendant who wishes to attack a search and seizure or an arrest must show that the officers did not have the proper warrant. If he does, the burden of showing the legality of the search or arrest then shifts to the state. People v. Smith, 171

Cal.App.2d 568, 340 P.2d 640; People v. Prewitt, 52 Cal.2d 330, 341 P.2d 1; People v. Lyons, 204 Cal.App.2d 364, 22 Cal.Rptr. 327; People v. Reece, 201 Cal. App.2d 585, 589, 20 Cal.Rptr. 104. The officers were not asked whether they had either type of warrant; no evidence on the subject was offered by Nelson's counsel.

except for the illegally discovered marijuana, the police had no probable cause to arrest him. He also claims that the court erred in deciding the case without an evidentiary hearing as to the validity of the search and of the arrest.

We do not decide the legal contention as to the arrest, because, as will appear, such a decision is unnecessary in view of our disposition of the case. There can be no doubt that, if the search was lawful, the police had probable cause to arrest Nelson when they did arrest him. They then knew that there was marijuana in the apartment, and were told by Nelson that he and Thomas lived there. (See Beck v. State of Ohio, 1964, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed. 2d 142; Ker v. State of California, 1963, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726; Brinegar v. United States, 1949, 338 U.S. 160, 175–176, 69 S.Ct. 1302, 93 L.Ed. 1879; Hollins v. United States, 9 Cir., 1964, 338 F.2d 227, 229; Mangaser v. United States, 9 Cir., 1964, 335 F.2d 971, 974; Davis v. United States, 9 Cir., 1964, 327 F.2d 301).

We cannot say, as a matter of law, that the search was illegal. Two issues are here involved—whether Thomas was in a position to consent at all, and whether, if she was, her consent was voluntary, rather than coerced. The record does not compel an answer to either question favorable to Nelson. It is not disputed that Thomas and Nelson had been living in the apartment "sort of as husband and wife" (Thomas' version), as "man and wife" (Nelson's version), and that Thomas had the keys (Nelson's testimony). The only dispute is as to whether Nelson still lived there when the search was made. If he did, then he and Thomas were joint occupants. If he did not, then Thomas was the sole occupant. In either case, a trier of fact could decide that she had authority to let the officers in, and to permit them to make the search that they did. (See Burge v. United States, 9 Cir., 1965, 342 F.2d 408; Teasley v. United States, 9 Cir., 1961, 292 F.2d 460; Von Eichelberger v. United States, 9 Cir., 1958, 252

F.2d 184; Stein v. United States, 9 Cir., 1948, 166 F.2d 851; Roberts v. United States, 8 Cir., 1964, 332 F.2d 892; United States v. Eldridge, 4 Cir., 1962, 302 F. 2d 463; United States v. Sferas, 7 Cir., 1954, 210 F.2d 69). We need not decide whether she could have authorized a search of a part of the apartment that Nelson had reserved for his sole personal use, such as a closet or bureau or separate bedroom. The kitchen is not such an area, and it was not ransacked—the package was in plain view.

Similarly, we cannot say, as a matter of law, that Thomas' consent was not voluntary. This is a fact question, and the evidence in the record would sustain a finding that her consent was voluntary. United States v. Page, 9 Cir., 1962, 302 F.2d 81. It would be improper, therefore, for this appellate court to order the trial court to grant Nelson his freedom on the basis of either of his legal contentions.

There remains the question whether we should require that the trial court hold an evidentiary hearing. The decision of the state courts on these questions does not conclude the federal court. It must make an independent determination. Fay v. Noia, 1963, 372 U.S. 391, 421–426, 430–431, 83 S.Ct. 822, 9 L.Ed. 2d 837. And where, as here, facts are alleged that were not brought before the state court, the federal court ordinarily cannot deny the writ on the basis of the state decision. It must hold its own evidentiary hearing; it may do so even if the matter was fully considered by, and all evidence was presented to, the state court; it is not in any event *bound* by the state decision. Fay v. Noia, supra; Townsend v. Sain, 1963, 372 U.S. 293, 312–319, 83 S.Ct. 745, 9 L.Ed.2d 770. Prima facie, then, Nelson should have had a hearing in the District Court.

The District Court, however, concluded that Nelson had deliberately by-passed established state procedure whereby he could have raised his constitutional claims, and denied the writ on that ground. Fay v. Noia, supra, 372

U.S. at pp. 438–439, 83 S.Ct. 822. Unless that decision was correct, we must remand with directions that a hearing be held.

We hold that, under the peculiar facts of this case, the decision of the District Court was correct, although for somewhat different reasons. The District Court based its conclusion upon an examination of the state trial record. It felt that that record demonstrated that counsel intentionally, as a matter of tactics, failed to raise the constitutional questions. And it noted that Nelson did not assert, in any paper before the District Court, that he did not participate in the decision, or that counsel acted contrary to his wishes, or that he was unaware of, and did not understand counsel's choice. We agree that the state trial record strongly indicates that counsel deliberately failed to raise the constitutional questions. We need not now decide whether the court could so find, on the basis of that record alone.

In this court, Nelson has made it crystal clear that the counsel's choice was deliberate. In his opening brief, he says:

"Appellant respectfully submits that in light of the Federal District Court's treatment of the writ, subject made contact with the deputy public defender who represented him at the trial. This Court should take judicial notice that the counsel for the defense, has emphatically stated that he defended Appellant before the State Superior Court of Los Angeles, [sic] County, with a defense as to what he deemed to be the applicable law at that time. He further states that he did not pursue the search and seizure issue in view of the fact that he felt that the version of consent testified to by the state and federal officers would strongly outweigh his defense in this manner. The Counsel concludes that he thinks that he fought the case at the trial court to the best of his ability in view of the above circumstances, and did not see how the decisions of Mapp, Elkins, Cahan, Supra, [sic] would have enhanced Appellants case and defense even though the question of illegal search and seizure was an 'issue' at Appellant's Preliminary Hearing."

Nelson also asserts that he was made aware of the decision of his counsel, and that he did not agree to it. In his reply brief, he says:

"Appellant was represented by a deputy public defender under appointment by the Court. Although the question of illegal search and seizure was raised by counsel at the preliminary hearing, when the Appellant suggested to counsel at the trial that he felt that he had been subjected to an illegal search, and illegal arrest and seizure, counsel for the defense respectfully disagreed and stated that he would pursue the remedy best for the appellant. Appellant was unlearned and unskilled in the law, and did not have the storehouse of legal wisdom and knowledge possessed by counsel. He could, as a matter of fact only rely upon counsel's best judgment that he full well knew what he was doing, and that he would pursue each and every defense available to subject during the trial proceedings. Appellant, a layman at law, wholeheartedly relied upon counsel's skill and ability to deliver him from the powerful forces of the law enforcement officers, the district attorney and the court, who had combined their powerful skills together to deprive said Appellant of rights, privileges and immunities guaranteed to him by the Fourth, Fifth, Sixth and Fourteenth Amendments to the Federal Constitution as the Supreme Law of the Land. . . A choice made by counsel, not in harmony, nor in agreement with appellant should not be binding upon appellant. At no time, during the entire proceedings did the appellant wish to waive his rights as guaranteed to him. At no time did the appellant instruct counsel for the de-

fense to refuse to attack the case upon grounds of an illegal search and seizure. This choice was strictly counsels alone, and as such, was not participated in by the said appellant."

As thus now presented, the question is whether counsel's decision, known to Nelson at the time, but objected to rather than consented to by him, although his objection was not made known at the trial, constituted such a deliberate by-passing of state procedure as to justify the District Court's refusal to consider the merits of Nelson's constitutional claims.[3]

As announced by the Court in Fay v. Noia, supra, the "deliberate by-passing" doctrine is as follows:

"We therefore hold that the federal habeas judge may in his discretion deny relief to an appellant who has deliberately by-passed the orderly procedure of the state courts and in so doing has forfeited his state court remedies.

"But we wish to make very clear that this grant of discretion is not to be interpreted as a permission to introduce legal fictions into federal habeas corpus. The classic definition of waiver enunciated in Johnson v. Zerbst, 304 U.S. 458, 464, [58 S. Ct. 1019, 1023, 82 L.Ed. 1461]—'an intentional relinquishment or abandonment of a known right or privilege'—furnishes the controlling standard. If a habeas applicant, after consultation with competent counsel or otherwise, understandably and knowingly forewent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or

any other reasons that can fairly be described as the deliberate by-passing of state procedures, then it is open to the federal court on habeas to deny him all relief if the state courts refused to entertain his federal claims on the merits—though of course only after the federal court has satisfied itself, by holding a hearing or by some other means, of the facts bearing upon the applicant's default. Cf. Price v. Johnston, 334 U.S. 266, 291, [68 S.Ct. 1049, 1063, 92 L.Ed. 1356]. At all events we wish it clearly understood that the standard here put forth depends on the considered choice of the petitioner. Cf. Carnley v. Cochran, 369 U.S. 506, 513–517, [82 S.Ct. 884, 888–891, 8 L.Ed.2d 70]; Moore v. [State of] Michigan, 355 U.S. 155, 162–165, [78 S.Ct. 191, 195–197, 2 L.Ed.2d 167]. A choice made by counsel not participated in by the petitioner does not automatically bar relief. Nor does a state court's finding of waiver bar independent determination of the question by the federal courts on habeas, for waiver affecting federal rights is a federal question. E.g., Rice v. Olson, 324 U.S. 786, [65 S. Ct. 989, 89 L.Ed. 1367]."

If that pronouncement stood alone, we would feel compelled to reverse. But it does not. The problem was again before the Court in Henry v. State of Mississippi, 1965, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408. We recognize that Henry was a direct review of a state court conviction by writ of certiorari, and thus the context was one of "independent and adequate state grounds" of decision, which may differ from the "deliberate by-passing of state procedure"

3. If we were to hold that the facts do not justify the District Court's refusal to pass upon the merits of Nelson's claims, that would not require us to order the District Court to hold a hearing on the merits. It would then still be proper for the District Court to hold a hearing on the question of "deliberate by-passing." Nelson's assertions are not conclusive as

to the fact that he disagreed with and objected to counsel's strategy. We merely accept them here in the manner in which a court accepts the allegations of a complaint on motion to dismiss—taking them as true for the purpose of considering the legal question that they present.

involved in federal habeas corpus cases, such as Fay v. Noia, supra. We recognize, too, that the Court drew a distinction (by no means for the first time) between state substantive grounds and state procedural grounds, holding that the latter are not to "prevent vindication of * * * federal rights unless the State's insistence on compliance with its procedural rule serves a legitimate state interest."

There can be no doubt, however, that Henry stands for certain propositions that are applicable here. *First,* it holds that a rule like the California rule that requires objection to illegally obtained evidence does serve a legitimate state interest:

> "The Mississippi rule requiring contemporaneous objection to the introduction of illegal evidence clearly does serve a legitimate state interest. By immediately apprising the trial judge of the objection, counsel gives the court the opportunity to conduct the trial without using the tainted evidence. If the objection is well taken the fruits of the illegal search may be excluded from jury consideration, and a reversal and new trial avoided." (P. 448, 85 S. Ct. § 567)

*Second,* it indicates that the deliberate by-passing of state procedure and waiver are usually substantially the same thing:

> "This will not lead inevitably to a plethora of attacks on the application of state procedural rules; where the state rule is a reasonable one and clearly announced to defendant and counsel, application of the waiver doctrine will yield the same result as that of the adequate non-federal ground doctrine in the vast majority of cases."[4] (P. 448, fn. 3, 85 S.Ct. p. 567)

*Third,* after quoting a portion of the Fay opinion that we have quoted above, the Court indicated that, in a situation like this one, it is counsel's decision that controls:

> "The evidence suggests reasons for a strategic move. * * * If either reason motivated the action of petitioner's counsel, and their plans backfired, counsel's deliberate choice of the strategy would amount to a waiver binding on petitioner and would preclude him from a decision on the merits of his federal claim either in the state courts or here. Although trial strategy adopted by counsel without prior consultation with an accused will not, where the circumstances are exceptional, preclude the accused from asserting constitutional claims, see Whitus v. Balkcom, 333 F.2d 496 (C.A. 5th Cir. 1964), we think that the deliberate bypassing by counsel of the contemporaneous-objection rule as a part of trial strategy would have that effect in this case." (Pp. 451–452, 85 S.Ct. p. 569)

*Fourth,* the opinion indicates that, if the question were to arise in federal habeas corpus, the Court would then test "the effectiveness of the procedural default to foreclose consideration of his constitutional claim." (Id. at 452, 85 S. Ct. at 570) There is no indication that the applicable rule would be different—

---

4. It can hardly be claimed that California's rule requiring objection to the offer of illegally obtained evidence, and the raising of the constitutional objection at trial, was not "clearly announced to defendant and counsel." The contemporaneous-objection rule is but an application of the universal rule that material and relevant evidence, excludable on any ground, is admissible unless objection is made, and the grounds of objection are stated, when the evidence is offered. The rule is as old as the American common law. Our method of trying cases would be well nigh unworkable without it. Its specific application to evidence obtained by an unlawful search and seizure is well established in California. People v. Richardson, 1959, 51 Cal.2d 445, 334 P.2d 573 and cases there cited; People v. Demery, 1960, 187 Cal.App.2d 613, 10 Cal. Rptr. 135; People v. Phelps, 1961, 192 Cal.App.2d 12, 13 Cal.Rptr. 383, 387; and see cases cited by the District Court, supra.

quite the contrary, for the Court cites Fay v. Noia in the course of its discussion.[5]

We think that Henry limits Fay v. Noia at least to this extent—that it stands for the proposition that counsel's decision, although made "without prior consultation with an accused," to by-pass the contemporaneous-objection rule as part of trial strategy, will nevertheless "preclude the accused from asserting constitutional claims" (id. at 451, 85 S. Ct. at 569). Thus the broad language in Fay, to the effect that the decision (there, a decision not to appeal)[6] must be the choice of the petitioner, and that a choice made by counsel, not participated in by petitioner, does not automatically bar relief, does not here apply.[7]

Does the fact that here there was prior consultation with the accused, and that he disagreed with counsel's strategy, make a legal difference? This question has not been before the Supreme Court.[8] Our view is that the result should be the same. Our reasons are that only counsel is competent to make such a decision, that counsel must be the manager of the law-suit, that if such decisions are to be made by the defendant, he is likely to do himself more harm than good, and that a contrary rule would seriously impair the constitutional guaranty of the right to counsel. (See Rhay v. Browder, 9 Cir., 1965, 342 F.2d 345). One of the surest ways for counsel to lose a lawsuit is to permit his client to run the trial. We think that few competent counsel would accept retainers, or appointment under the Criminal Justice Act of 1964, to defend criminal cases, if they were to have to consult the defendant, and follow his views, on every issue of trial strategy that might, often as a matter of hindsight, involve some claim of constitutional right. (See Mitchell v. United States, 1958, 104 U.S.App.D.C. 57, 259 F.2d 787, 793).[9]

Bad faith on counsel's part, or incompetence, are something else. There is no claim of bad faith. Nelson's claim, asserted for the first time in his closing

5. To us, it would be strange indeed if the rule were different in habeas corpus. Such a divergence of rules would encourage the very thing that the opinion in Henry says that it seeks to prevent—the repeated litigation of the same question, first in state courts and then in federal courts, with evidentiary hearings in each.

6. The decision as to whether to appeal is not part of trial strategy. It is one that is made by the client, not his attorney. There are numerous others, e.g., whether to plead not guilty, nolo, or guilty, whether to waive a jury, that fall in this class.

7. In Henry, the Court sent the matter back to the state court for a determination as to whether counsel did deliberately by-pass the state rule. Here, such a hearing is unnecessary. Nelson asserts that counsel did so, and, for the purpose of this decision, we accept the assertion as true. See footnote 3, supra.

8. Decisions of this and other courts of appeals indicate that even where the accused expresses to the court his dissatisfaction with counsel's strategy, the right to assistance of counsel does not require that counsel be dismissed unless the accused clearly desires to conduct his own defense, or counsel's conduct amounts to a total failure of preparation. The right to assistance of counsel does not require successful assistance. See Enriquez v. United States, 9 Cir., 1964, 338 F.2d 165; De Roche v. United States, 9 Cir., 1964, 337 F.2d 606; Arellanes v. United States, 9 Cir., 1964, 326 F.2d 560; Lyons v. United States, 9 Cir., 1963, 325 F.2d 370; Rivera v. United States, 9 Cir., 1963, 318 F.2d 606; Proffit v. United States, 9 Cir., 1963, 316 F.2d 705; Schlette v. People of State of California, 9 Cir., 1960, 284 F.2d 827; Swope v. McDonald, 9 Cir., 1949, en banc, 173 F.2d 852; Brown v. United States, 1959, en banc, 105 U.S.App.D.C. 77, 264 F.2d 363, 367; Mitchell v. United States, 1958, 104 U.S.App.D.C. 57, 259 F.2d 787.

9. If defendant is dissatisfied with his counsel's position, he is not without remedy. He can discharge his counsel and the court can, in its discretion, if counsel is appointed, appoint new counsel. The Criminal Justice Act of 1964 expressly provides for this. See 18 U.S.C. § 3006A (c): "The United States commissioner or the court may, in the interests of justice, substitute one appointed counsel for another at any stage of the proceedings."

brief here, that his counsel was incompetent,[10] is belied by the trial record and by Nelson's own statements on the same subject, previously quoted in this opinion. He was represented by the Public Defender's Office of Los Angeles County, an office far more experienced in the defense of criminal cases than most private counsel. And the deputy defender's judgment that the constitutional claims now asserted would probably not be upheld was, as has already been indicated, quite reasonable. His refusal to assert them is certainly not, under these circumstances, evidence of incompetence. No other basis for the claim of incompetence is asserted.

■ We do not think that the willingness of the California District Court of Appeal to pass upon Nelson's constitutional claim prevents a federal court, on habeas corpus, from invoking the rule as to deliberate by-passing of state procedure, or waiver, in this case. On habeas corpus, state procedural rules do not foreclose the federal court from considering the merits of federal claims. (Henry v. State of Mississippi, 1965, 379 U.S. 443, 449, 85 S.Ct. 564, 13 L.Ed.2d 408) As here invoked, the deliberate by-passing or waiver rule is not procedural; it is based upon a conscious choice, by the petitioner's counsel, when confronted with a procedural rule, rather than upon the rule itself. Nelson could probably have raised the constitutional point on direct review by petition to the Supreme Court for certiorari, because the California Appellate Court did pass upon it. (Cf. Williams v. State of Georgia, 1955, 349 U.S. 375, 75 S.Ct. 814, 99 L.Ed. 1161). It does not follow that, for purposes of federal habeas corpus, there was no deliberate by-passing—no waiver—in the state trial court.

In a supplementary brief, Nelson also relies upon Escobedo v. State of Illinois, 1964, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 and Massiah v. United States, 1964, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246. We find no facts in this record that would make those decisions applicable.

Affirmed.

---

10. "Appellant could not have waived his right to due process by the acts of counsel (deputy-public defender), who was not paid by appellant. This attorney was not familiar with the applicable laws governing searches and seizures, and attempted his best at trial, especially as here, to be sure, since he relied heavily on the so-called 'consent' doctrine, and refused to accept appellant's version to attack the case upon grounds of illegal search and seizure. Appellant could not defend himself, for 'any man who defends himself has a fool for a client.'"