(Nos. 39515, 39524 cons.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee and Defendant in Error, *vs.* MARVIN WILLIAMS, Appellant and Plaintiff in Error.

*Opinion filed Sept. 23, 1966.—Rehearing denied Oct. 27, 1966.*

Schaefer, J., dissenting.

Richard M. Calkins, of Chicago, appointed by the court, for appellant and plaintiff in error.

William G. Clark, Attorney General, of Springfield, and Daniel P. Ward, State's Attorney, of Chicago, (Fred G. Leach, Assistant Attorney General, and Elmer C. Kissane, James B. Zagel and Carmen V. Speranza, Assistant State's Attorneys, of counsel,) for the People.

Mr. Justice House delivered the opinion of the court:

Marvin Williams was indicted along with Samuel Jones, Johnnie Walker, Robert House, David Sanders and Samuel Lacey in the criminal court of Cook County for the crime

of rape. In a joint bench trial all of the defendants were found guilty and sentenced to the penitentiary. Williams, who was sentenced to the penitentiary for 15 years, filed a petition under the Post-Conviction Hearing Act. (Ill. Rev. Stat. 1965, chap. 38, pars. 122—1 *et seq.*) His appeal from a dismissal of this petition has been consolidated for review with his writ of error.

The complaining witness testified that about 10:00 o'clock P.M. on January 16, 1961, she was returning to her home from church and had gotten off a bus at Douglas and Kedzie. As she was walking along the street, some boys came up behind her and grabbed her around the neck. The boy who grabbed her said he had a knife in her back. She was taken to a basement where one of the boys took her purse and she was told to take off her clothes. She said that all six of the defendants then had sexual relations with her. On cross-examination she stated that four or five of the defendants had sexual relations with her at this time. Three of the boys then took her to a vacant building and had sexual relations with her.

Samuel Jones testified that he grabbed the prosecuting witness around the neck and took her to the basement with the intent of robbing her. Sanders, Lacey and Walker were with him at this time. He took $3 from her purse and gave Walker, Sanders and Lacey each $1. Those three left and Williams and House then arrived. Williams, House and Jones then took her to a vacant building. Jones said he asked to have sexual relations with her and she consented.

The other defendants all admitted that they were at the basement or the vacant building, but they all denied that they had sexual relations with the complaining witness, that they threatened her, that they heard or saw anyone threaten her, or that they saw any of the other defendants have sexual relations with her. A joint confession by Williams, Jones and House was introduced into evidence in which they admitted taking the woman to the empty building and each

of them having sexual intercourse with her there. In this confession Jones accused Williams of threatening her with a nail file, but this was denied by Williams. Williams in turn accused House of threatening her with a knife, but this was also denied in the confession by House. At the trial Williams denied that he made that part of the confession in which he admitted having sexual relations with the complaining witness and that he had accused House of threatening her with the knife.

The points raised by the petition under the Post-Conviction Hearing Act and by the writ of error are the same. Petitioner's two basic arguments are that he was denied adequate assistance of counsel and that the appointment of a single public defender to represent six defendants at their joint trial was an "ineffective appointment."

Much of petitioner's argument centers around defense counsel's stipulation that the joint "confession" of Jones, House and Williams could be admitted in evidence. He now argues that he confessed because of threats and promises of leniency, that he was not represented by counsel or advised of his rights when he confessed and that defense counsel stipulated to the confession to exculpate other of the defendants. While he attacks the stipulation from various aspects, the basic complaint seems to be that his counsel should have demanded a preliminary hearing on admissibility.

The record shows that defense counsel stipulated that the confession could be admitted as to the defendants who made the various statements in the confession and further stipulated that no weight be given those statements until the maker had testified. The additional stipulation was obviously made because defense counsel knew the makers of the statements were going to deny making them. When Williams did in fact testify, he denied making any of the incriminating statements in the confession.

In *People* v. *Gray,* 33 Ill.2d 349, it was alleged that

counsel's failure to move to suppress alleged oral confessions was tantamount to no representation at all. There, as here, defendant at the trial denied that he had made any confessions. We stated, at page 355, "We cannot say that where alleged confessions are denied as having ever been made, incompetency of counsel is indicated by the absence of a motion to suppress them. As a matter of trial tactics, counsel evidently relied upon his client's testimonial denial of ever having stated that he committed the crime. This is not unusual, as under the former practice where defendant denied making a confession it was unnecessary for the trial court to grant a hearing on a motion to suppress. *People* v. *Hegovic*, 348 Ill. 58; overruled in *People* v. *Norfleet*, 29 Ill.2d 287." The stipulation of defense counsel does not show inadequate assistance of counsel.

The question now is whether petitioner is entitled to a hearing on the voluntariness of the admissions he made in the joint statement. As we have pointed out, the petitioner at the time of his trial in March, 1961, denied all the incriminating admissions of the joint statement stipulated into the record. The first suggestion that he did make these admissions and that they were not made voluntarily came in his petition filed 4 years later on March 11, 1965, under the Post-Conviction Hearing Act.

In *People* v. *Smith*, 32 Ill.2d 88, 93, we stated, "A confession obtained by coercion is, of course, inadmissible, and it is the usual rule that where an issue is raised concerning the voluntary nature of a confession the court must make a determination of that issue. However, constitutional claims, like other claims, may be waived. The record clearly shows that defendant's counsel stipulated that the confessions might be admitted in evidence without objection. This agreement waived any claim that the confessions were improperly obtained. It is of no significance that the attorney was appointed by the court, for the same rules of procedure apply whether counsel is appointed or privately retained."

This pronouncement would be dispositive of this issue, but we feel it should be considered in light of recent Supreme Court decisions concerning waiver of a Federally guaranteed constitutional right. We recognize, of course, that we need not forego our procedural rules for preserving constitutional claims for review when such rules serve a legitimate State interest, (see *Henry* v. *State of Mississippi,* 379 U.S. 443, 452, 85 S. Ct. 564, 570, 13 L. Ed. 2d 408, 415) ; nevertheless we have relaxed the waiver principle of a constitutional claim where fundamental fairness so required. See *People* v. *Hamby,* 32 Ill.2d 291.

In *Fay* v. *Noia,* 372 U.S. 391, 83 S. Ct. 822, 9 L. Ed. 2d 837, the Supreme Court stated, "Although we hold that the jurisdiction of the federal courts on habeas corpus is not affected by procedural defaults incurred by the applicant during the state court proceedings, we recognize a limited discretion in the federal judge to deny relief to an applicant under certain circumstances." (372 U.S. 391, 438, 83 S. Ct. 822, 848, 9 L. Ed. 2d 837, 868.) The court then announced the "deliberate by-passing" doctrine as follows: "We therefore hold that the federal habeas corpus judge may in his discretion deny relief to an applicant who has deliberately by-passed the orderly procedure of the state courts and in so doing has forfeited his state court remedies. But we wish to make very clear that this grant of discretion is not to be interpreted as a permission to introduce legal fictions into federal habeas corpus. The classic definition of waiver enunciated in *Johnson* v. *Zerbst,* 304 U.S. 458, 464, 82 L. Ed. 1461, 1466, 58 S. Ct. 1019, 146 A.L.R. 357—'an intentional relinquishment or abandonment of a known right or privilege'—furnishes the controlling standard. If a habeas applicant, after consultation with competent counsel or otherwise, understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or any other reasons that can fairly be described as the deliberate

by-passing of state procedures, then it is open to the federal court on habeas to deny him all relief if the state courts refused to entertain his federal claims on the merits— though of course only after the federal court has satisfied itself, by holding a hearing or by some other means, of the facts bearing upon the applicant's default. *Cf. Price* v. *Johnston,* 334 U.S. 266, 291, 92 L. Ed. 1356, 1372, 68 S. Ct. 1049. At all events we wish it clearly understood that the standard here put forth depends on the considered choice of the petitioner. *Cf. Carnley* v. *Cochran,* 369 U.S. 506, 513-517, 8 L. Ed. 2d 70-75, 82 S. Ct. 884; *Moore* v. *Michigan,* 355 U.S. 155, 162-165, 2 L. Ed. 2d 167, 172-174, 78 S. Ct. 191. A choice made by counsel not participated in by the petitioner does not automatically bar relief. Nor does a state court's finding of waiver bar independent determination of the question by the federal courts on habeas, for waiver affecting federal rights is a federal question. *E.g., Rice* v. *Olson,* 324 U.S. 786, 89 L. Ed. 1367, 65 S. Ct. 989."

The issue of whether a constitutional question could be raised after a procedural default was again presented in *Henry* v. *State of Mississippi,* 379 U.S. 443, 85 S. Ct. 564, 13 L. Ed. 2d 408. In that case the defendant sought review in the Mississippi Supreme Court of whether evidence introduced at his trial had been illegally obtained. The Mississippi court held that failure of his counsel to object at the time the evidence was offered precluded review. The Supreme Court vacated the judgment of ·conviction and remanded for a hearing on the question whether the petitioner is to be deemed to have knowingly waived decision of his Federal claim when timely objection was not made to the admission of the illegally seized evidence.

In the *Henry* case it was not clear whether defense counsel had made an honest mistake in failing to make a contemporaneous objection or whether it was done as a matter of trial strategy, and the court remanded the cause for hearing on this point. In the course of the opinion the court did

comment, "Although trial strategy adopted by counsel without prior consultation with an accused will not, where the circumstances are exceptional, preclude the accused from asserting constitutional claims, see *Whitus* v. *Balkcom*, 333 F.2d 496 (C.A. 5th Cir. 1964), we think that the deliberate by-passing by counsel of the contemporaneous-objection rule as a part of trial strategy would have that effect in this case." 379 U.S. 443, 451-452, 85 S. Ct. 564, 569, 13 L. Ed. 2d 408, 415.

*Nelson* v. *California*, (9th cir.) 346 F.2d 73 (*cert.* denied 86 S. Ct. 452) involved a Federal district court order denying a petition for a writ of *habeas corpus*. As in the *Henry* case, Nelson's counsel in his State trial failed to make contemporaneous objection to the introduction of allegedly illegally obtained evidence. In this ·case, however, it was clear that defense counsel had failed to object as a part of his trial strategy rather than as an honest mistake. It was also clear that there was prior consultation by the attorney with the petitioner and that petitioner did not agree with counsel's strategy. In affirming the district court, the Court of Appeals stated, "We think that *Henry* limits *Fay* v. *Noia* at least to this extent—that it stands for the proposition that counsel's decision, although made 'without prior consultation with an accused,' to by-pass the contemporaneous-objection rule as part of trial strategy, will nevertheless 'preclude the accused from asserting constitutional claims' (id. at 451, 85 S. Ct. at 569). Thus the broad language in *Fay*, to the effect that the decision (there, a decision not to appeal) must be the choice of the petitioner, and that a choice made by counsel, not participated in by petitioner, does not automatically bar relief, does not here apply." (346 F.2d 73, 81.) The court also held that the fact that there was prior consultation with the accused and the accused disagreed with his counsel's strategy did not make a legal difference.

The court in the *Nelson* case also pointed out in a foot-

note to its interpretation of the *Fay* case that, "The decision as to whether to appeal is not part of trial strategy. It is one that is made by the client, not his attorney. There are numerous others, *e.g.*, whether to plead not guilty, *nolo*, or guilty, whether to waive a jury, that fall in this class." (346 F.2d 73.) In line with this observation we note that there are a number of rights which, under our criminal procedure, can only be waived by the affirmative act of the accused, for example, trial by jury must be understandingly waived by defendant in open court (Ill. Rev. Stat. 1965, chap. 38, par. 103—6); a preliminary examination must be waived by the defendant (chap. 38, par. 109—3); an indictment must be understandingly waived by the accused in open court (chap. 38, par. 111—2); a plea of guilty will not be accepted until the court fully explains the consequences of such plea and the maximum penalty which may be imposed and the defendant understandingly persists in his plea (chap. 38, par. 113—4); and a trial shall be conducted in the presence of the defendant unless he waives the right to be present. Chap. 38, par. 115—3.

The case of *Brookhart* v. *Janis*, 384 U.S. 1, 86 S. Ct. 1245, 16 L. Ed. 2d 314, while not expressly recognizing the distinction, does lend support to the principle that a waiver by counsel of a Federally guaranteed right as a matter of trial strategy will be binding on an accused, while waiver of a Federally guaranteed right which is outside the ambit of trial strategy will not bind the accused unless the accused participates in the waiver. In *Brookhart* the court stated, "Our question therefore narrows down to whether counsel has power to enter a plea which is inconsistent with his client's expressed desire and thereby waive his client's constitutional right to plead not guilty and have a trial in which he can confront and cross-examine the witnesses against him. We hold that the constitutional rights of a defendant cannot be waived by his counsel under such circumstances. It is true, as stated in *Henry* v. *Mississippi*, 379

U.S. 443, 451, 13 L. Ed. 2d 408, 414, 85 S. Ct. 564, that counsel may, under some conditions, where the circumstances are not 'exceptional, preclude the accused from asserting constitutional claims * * *.' Nothing in Henry, however, can possibly support a contention that counsel for defendant can override his client's desire expressed in open court to plead not guilty and enter in the name of his client another plea—whatever the label—which would shut off the defendant's constitutional right to confront and cross-examine the witnesses against him which he would have an opportunity to do under a plea of not guilty." 86 S. Ct. 1245, 1248-1249, 16 L. Ed. 2d 314, 319.

Applying the foregoing principles to this case we believe that a hearing under the Post-Conviction Hearing Act on the voluntariness of the confession was properly denied. (But *cf. Mitchell* v. *Stephens,* (8th cir.) 353 F.2d 129.) Unlike the *Henry* case there is no doubt that there was a waiver by counsel and not an honest mistake in failing to request a preliminary hearing on the admissibility of the confession. His stipulation shows that he intentionally bypassed a hearing on the voluntariness of the statement because he was prepared to show that his clients had not made the damaging admissions in the statement.

We also believe that the failure to question the voluntariness of the confession was a matter of trial strategy. Petitioner, of course, had the right to deny that he made the incriminating statements and also raise the question of the voluntariness of the statements. (*People* v. *Norfleet,* 29 Ill2d 287.) It must be acknowledged, nevertheless, that there is an obvious inconsistency when an accused states that he did not make the incriminating statements and that he did make them but they were coerced.

In *Lee* v. *Mississippi,* 332 U.S. 742, 68 S. Ct. 300, 92 L. Ed. 330, the Supreme Court held that an accused who denied making a confession was not precluded from also asserting at the trial that the confession was involuntary. In

that case it was not clear whether the accused had denied making the confession. He said, "I didn't admit I did it" and the court pointed out that such testimony might be construed as nothing more than a layman's inexact way of stating that his answers did not amount to a voluntary confession. Here, however, the petitioner was cross-examined as to each question asked of him when the statement was made and as to his reply thereto. He admitted that each question in the statement was asked and that he made certain nonincriminatory replies, but he specifically denied that he had said he had sexual intercourse with the woman or that House had a knife. Furthermore, during the course of the trial there was never any suggestion that the incriminating statements attributed to petitioner were made under duress.

The strategy of defense counsel's stipulation is apparent. Petitioner either made these incriminating statements or he did not. In his trial he testified under oath that he did not make them. Now he swears under oath in his affidavit that he made the statements, but he did so because a police officer said he would get a lighter sentence. His testimony at the trial and his affidavit cannot both be true. While an accused has the legal right to deny the statements attributed to him and also admit making them but under duress, as a practical matter, it would be most difficult to convince the trial judge of either position when both are being advanced.

We feel that the reasons stated in *Nelson* v. *California* for holding that an accused is bound by his counsel's decision on a matter of trial strategy in the absence of incompetence or bad faith by counsel bear repeating. "Our reasons are that only counsel is competent to make such a decision, that counsel must be the manager of the law-suit, that if such decisions are to be made by the defendant, he is likely to do himself more harm than good, and that a contrary rule would seriously impair the constitutional guaranty of the right to counsel. (See *Rhay* v. *Browder,* 9 Cir., 1965, 342 F.2d 345.) One of the surest ways for counsel to lose

a lawsuit is to permit his client to run the trial. We think that few competent counsel would accept retainers, or appointment under the Criminal Justice Act of 1964, to defend criminal cases, if they were to have to consult the defendant, and follow his views, on every issue of trial strategy that might, often as a mater of hindsight, involve some claim of constitutional right." 346 F.2d 73, 81.

Aside from the issue of voluntariness, the petition under the Post-Conviction Hearing Act raises one other point concerning the admission of the confession. It is alleged that petitioner was not advised prior to questioning by the police and State's Attorney that he had a right to remain silent and that he had a right to the presence of an attorney. Petitioner urges that we reconsider and overrule our holding in *People* v. *Hartgraves,* 31 Ill.2d 375, 380, where we stated, "We do not, however, read the *Escobedo* case as requiring the rejection of a voluntary confession because the State did not affirmatively caution the accused of his right to have an attorney and his right to remain silent before his admissions of guilt." See also *People* v. *Kees,* 32 Ill.2d 299.

After this case had been submitted for decision, the Supreme Court ruled in *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 1612, 16 L. Ed. 2d 694, 706, "Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." This, of course, overrules our view expressed in *People* v. *Hartgraves.* In *Johnson* v. *New Jersey,* 384 U.S. 719, 86 S. Ct. 1772, the court ruled, however, that the holding in *Escobedo* v. *Illinois,* 378 U.S. 478, 84 S. Ct. 1758, 12 L. Ed. 2d 977, is available only to persons whose trials began after June 22, 1964, and that the guidelines laid down in *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, are available only to persons whose trials had not begun as of June 13, 1966. For the reasons stated by the Supreme Court

in *Johnson* v. *New Jersey,* we feel that the holding in *Escobedo* v. *Illinois* and the guidelines laid down in *Miranda* v. *Arizona* should not be applied to trials commenced in this State prior to the date those decisions were announced.

Petitioner also asserts that there were conflicting interests between him and his co-defendants which foreclosed his counsel from giving effective assistance to him. To support this assertion he points out that Samuel Jones testified he grabbed the complaining witness around the neck, hit her in the face, had sexual intercourse with her and named him as one of the persons present at the time of the rape. He now contends defense counsel should have, but did not, cross-examine and impeach this witness.

An examination of Jones's testimony shows that it did not incriminate petitioner as he now contends, but on the contrary, it tended to exculpate him. Jones said he did not see any of the other defendants have sexual intercourse with the woman, that he did not see Williams with a finger nail file or other weapon and that he did not hear Williams threaten her. He did say he met Williams in the alley outside the basement and that he, Williams and House went to the vacant building. All of this testimony is exactly the same as Williams's testimony. Since there was no conflict between Jones's testimony and petitioner's testimony, there was no reason to cross-examine or impeach Jones.

It is argued that counsel did not object to damaging inadmissible evidence. On cross-examination Jones testified that Williams did not threaten the woman. He was then asked if he had not in his confession stated Williams did threaten her. He admitted making that statement in his confession, but again denied that Williams had threatened her. Counsel did object and stated that the prosecutor was arguing with the witness and that he had only impeached the witness. The trial judge overruled the objection as to Jones. We think this ruling by the trial judge shows that the evi-

dence used to impeach Jones was not admissible as substantive evidence of Williams's guilt or innocence and would not be so considered.

It is finally argued that appointing a single attorney to represent all six defendants at their joint trial denied petitioner effective assistance of counsel. The petitioner and his co-defendants did not present conflicting defenses. Each testified to his own involvement and the version given by each defendant corroborated the version given by the others. There is nothing in this record to suggest that there would have been a different result if there had been six attorneys appointed to represent the defendants in this trial or in six different trials. We find no error in appointing one counsel to represent all the defendants under the facts of this case. *People* v. *Hall*, 27 Ill.2d 501.

The judgment of conviction and the judgment dismissing the petition for a post-conviction hearing are both affirmed.

*Judgments affirmed.*

Mr. JUSTICE SCHAEFER, dissenting:

I concur in the opinion of the court insofar as it holds that the principles announced in *Escobedo* v. *Illinois*, 378 U.S. 478, 12 L. Ed.2d 977 and *Miranda* v. *Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694 were not applicable to the defendant's trial. I dissent because I think that the allegations of the defendant's post-conviction petition concerning his arrest, detention, and promises and threats allegedly made to him, entitled him to a hearing as to the voluntariness of the confession that was admitted in evidence against him. *Davis* v. *North Carolina*, 384 U.S. 737, 16 L. Ed. 2d 895.

The opinion of the court holds that the question of the voluntariness of the confession obtained by an assistant State's Attorney from this 16-year-old defendant was forever waived by the "trial strategy" of the public defender, who stipulated to the admission of the confession in evi-

dence. I can see no possible advantage the defendant could have gained by reason of the "strategy" that the court attributes to his attorney. The defendant in this case did not deny that he made the confession. He did deny that he had given certain answers that were included in it, but under the decisions of the Supreme Court of the United States in *Lee* v. *Mississippi,* 332 U.S. 742, 92 L. Ed. 330 and *People* v. *Norfleet,* 29 Ill.2d 287, his right to a hearing upon the voluntariness of the confession would not have been forfeited even if he had totally denied that he made any confession.

The court apparently rests its holding upon *Nelson* v. *California,* (9th cir. 1965) 346 F.2d 73, (*cert.* denied 384 U.S. 964, 15 L. Ed. 2d 367.) In that case the defendant's attorney did not make a contemporaneous objection to the admission of evidence which was allegedly the product of an illegal search. In my opinion the *Nelson* case has no bearing upon the issue here presented. The right involved in that case is not the right of the defendant involved in this case. The voluntariness of a confession goes to the reliability of the conviction, whereas the product of an illegal search is excluded in order to deter police misconduct. (See Note, 80 Harvard Law Review, 422, 435.) Moreover, the potential tactical advantage in refraining from moving to suppress illegally obtained evidence is clear, because if the motion is made the prosecution may, at the hearing upon the motion, offer evidence to show probable cause which would otherwise not be admissible.

The considerations that moved me to dissent from the opinion of the court in *People* v. *Richardson,* 32 Ill.2d 472, are also present in this case.