THE PEOPLE OF THE STATE OF ILLINOIS, Respondent-Appellee, *v.* MICHAEL HAMMOND, Petitioner-Appellant.

First District (2nd Division) No. 60870

Opinion filed December 31, 1975.—Rehearing denied February 11, 1976.

James J. Doherty, Public Defender, of Chicago (Marc Fogelberg and Ira Churgin, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Donald M. Devlin, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LEIGHTON delivered the opinion of the court:

This appeal arises from a post-conviction proceeding in which the petitioner alleged that at the age of 13 he was convicted of murder after his right to a trial by jury was waived not by him but by his lawyer and his parents. A hearing was held on the petition; the trial court found the allegations were true; but post-conviction relief was denied. The issue presented is whether a 13-year-old defendant's constitutional right to a trial by jury can be waived by his lawyer and parents. The parties are in agreement concerning the material facts.

## I.

On October 6, 1967, 13-year-old Michael Hammond appeared in the criminal division of the circuit court of Cook County charged with murder in a two-count indictment. Present with him were his lawyer and his parents. When the case was called, the lawyer announced that there was going to be a waiver of jury. The trial judge then addressed Michael, asking him how old he was and whether he knew the charge against him. Michael said he was 13 years old and he knew he was charged with murder. The judge asked him if he wished to waive trial by jury and when he gave an uncertain response, the judge asked him if he knew he was entitled to a jury. Michael said, "Yes." The judge asked him if he knew what a jury was. Michael said, "No." Thereupon, the judge explained the composition of a jury, how it was selected, and what it did. He asked Michael if he understood; and Michael said, "Yes." The trial judge asked him if he wanted his case heard by a judge; Michael said, "Yes." The judge then asked him, "And you wish to waive the jury?" But before Michael could answer, the assistant State's attorney in charge interrupted with the suggestion that Michael's lawyer talk with him "* * * in private for a few minutes to be sure that [he] has know-

ingly and intelligently waived his right to jury." The lawyer agreed with the suggestion, saying, "I can do that. I can talk to him right in the presence of everybody, after all, he is an intelligent young fellow." The judge then instructed the lawyer and Michael's parents to go into a nearby room "* * * and talk to the boy so he understands." This was done; the proceedings were adjourned; and after an interval, the case was recalled.

The judge inquired if Michael had conferred with his lawyer and his parents. The lawyer said that "[w]e talked to him and he understands the impact of what has been told to him and he is agreeable to have the case heard by your Honor and he understands what is meant by waiving of a jury, he doesn't want to have 12 men hear it, he would rather have you hear it." Michael was present when this was said; and, so were his parents. The judge then requested that Michael execute the jury waiver, but the assistant State's attorney asked the court to interrogate the parents concerning their understanding of what was taking place. This was done, and each expressed an understanding of the jury waiver their son was going to execute. Michael then signed the waiver document and gave it to the deputy clerk. The case went to trial without a jury, Michael was convicted, and the court sentenced him to serve 25 to 30 years on committal to the Youth Commission. He took a direct appeal to the supreme court where counsel was appointed to represent him. There, no issue was raised concerning the waiver of jury. His conviction was affirmed in *People v. Hammond,* 45 Ill.2d 269, 259 N.E.2d 44. Then, a little more than 2 years later, he instituted the post-conviction proceeding in this case. The trial court considered the allegations concerning the waiver of jury, aided by a transcript of the murder prosecution. It found the allegations concerning the waiver of jury were true, noting that "* * * the Court ordered that the defendant sign the waiver, but it is apparent that the defendant, Michael Hammond, did not himself ever say again that he understood what a jury trial was and that he understood that he was waiving it and perhaps the Court should have had some words from the boy's mouth himself, rather than from his lawyer and the boy's mother and father * * *." The trial judge found that the record adequately preserved the issue whether the 13-year-old defendant's right to trial by jury could be waived by his lawyer and his parents. He urged that the issue be reviewed. It is here before us.

## II.

■■ In approaching its resolution, we bear in mind that on October 6, 1967, when Michael Hammond was before the trial court, a minor 13

years of age or over who committed an act which constituted a crime under the laws of this State could be indicted and prosecuted in the circuit court. (*People v. Bombacino,* 51 Ill.2d 17, 280 N.E.2d 697; *People v. Davenport,* 111 Ill.App.2d 197, 249 N.E.2d 328; see Ill. Rev. Stat. 1967, ch. 37, par. 702—7(1)(3)(5).) And such a minor, if he were under the age of 18 years, could waive trial by jury in any case, and even plead guilty, if he was represented by counsel in open court. (See *People v. Granberry,* 45 Ill.2d 11, 256 N.E.2d 830; Ill. Rev. Stat. 1967, ch. 38, par. 113—5.) In such a case, it would be the duty of the trial judge to see that the election to forgo a jury trial is expressly and intelligently made by the accused. (*People v. Surgeon,* 15 Ill.2d 236, 154 N.E.2d 253.) There is no specific or defined formula which the judge must follow, or by which it can be determined whether a waiver is understandingly made. Of necessity, the determination must rest on the facts of each particular case. *People v. Wesley,* 30 Ill.2d 131, 195 N.E.2d 708.

In the case before us, Michael Hammond was described by his lawyer as an intelligent young fellow with whom a conversation concerning trial by jury could be had in open court; and in the colloquy with the trial judge, Michael manifested an understanding of the charge against him and concerning trial by jury, except that on one occasion he said he did not know what a jury was. In all the other instances, when he was asked about his understanding of the jury, he answered the questions in the affirmative. And after a conference with his lawyer and his parents, he readily, with a firm hand, executed the jury waiver. It is true that after the conference Michael himself did not say he wanted to waive the jury. All he did was sign the waiver document and return it to the deputy clerk.

■■ The lawyer who was representing him was selected for Michael's defense by his parents. We assume that Michael's acquiescence in this selection stemmed from parental obedience rather than from voluntary acceptance. Despite this fact, the selection of counsel was binding on him. The lawyer in court was his lawyer. (*People v. Cox,* 12 Ill.2d 265, 146 N.E.2d 19.) And generally, it is said that an accused is bound by the decisions of his lawyer on all matters of trial strategy, in the absence of incompetence or bad faith. (*People v. Williams,* 36 Ill.2d 194, 222 N.E.2d 321.) The tactical decisions which a lawyer makes in furthering the defense of a criminal case are binding on the defendant. (Compare *People v. Nichols,* 27 Ill.App.3d 372, 327 N.E.2d 186.) Application of this rule does not depend on the nature of the decision or on its success or failure. See *People v. Novotny,* 41 Ill.2d 401, 244 N.E.2d 182.

The record of Michael's nonjury trial was made an exhibit in this post-conviction proceeding when the State moved to dismiss. It was con-

sidered by the trial court; and we have examined it. It reveals with stunning sharpness that the murder charge against the 13-year-old defendant was a gruesome and barbaric killing of a 12-year-old lad who, after his hands were tied behind him, was shot in the head and his body burned. A long parade of witnesses, including an accomplice, testified and gave evidence on which the trial court rested its finding of guilty as charged. Gruesome photographs of the little boy's body were introduced in evidence. We conclude that the decision of Michael Hammond's lawyer not to submit the case to a jury was for his benefit. This fact becomes clear when it is noticed that on October 6, 1967, a person convicted of murder in this State could be punished by death or imprisonment in the penitentiary for an indeterminate term with a minimum of not less than 14 years. If he were found guilty by a jury, a sentence of death could not be imposed unless its verdict so provides in accordance with section 1—7(c)(1) of the criminal code. See Ill. Rev. Stat. 1967, ch. 38, pars. 9—1(b), 1—7(c)(1).

■■ Therefore, after considering the colloquy between Michael Hammond and the trial judge, his responses and conduct, together with those of his lawyer and his parents, we conclude that his execution of the jury waiver was knowing and intelligent. It is also our judgment that his lawyer and his parents acted in his interest and for his benefit. The lawyer made representations to the court; the parents were questioned and their answers revealed a complete understanding of all the facts that affected their son's interest. Under these circumstances, we are of the opinion that the constitutional right to a trial by jury of Michael Hammond, the 13-year-old murder defendant, could be waived by his lawyer and his parents. (Compare *In re Lamb*, 61 Ill.2d 383, 336 N.E.2d 753; *People v. Sailor*, 43 Ill.2d 256, 253 N.E.2d 397; see *People v. King*, 30 Ill.App.2d 264, 174 N.E.2d 213.) The order denying post-conviction relief is affirmed.

Affirmed.

DOWNING, P. J., and STAMOS, J., concur.